IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Appeal by Millbrook Homeowners Association from the January 19, 2021 Conditional Use Decision of the Palmyra Township Board of Supervisors | : <br> : <br> : <br> : No. 1378 C.D. 2024 <br> : Argued: December 8, 2025 <br> : |
| Appeal of: Millbrook Homeowners Association | : <br> : |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge (P.)
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:      April 9, 2026

Following our remand in *Appeal of: Millbrook Homeowners Association* (Pa. Cmwlth., No. 528 C.D. 2021, filed September 19, 2023) (*Millbrook I*), the Millbrook Homeowners Association (Association) appeals from the September 9, 2024 Order of the Pike County Court of Common Pleas (trial court) that dismissed the Association's appeal. The Association appealed to the trial court from the decision of the Board of Supervisors of Palmyra Township (Board) that granted an application for a conditional use (Application) filed by Lake Region VI, LLC (Applicant) for a project to add 5 single-family dwellings to an existing development containing 16 multi-family dwellings on a 10.71-acre parcel located in Palmyra Township (Project and Township, respectively). Reproduced Record (R.R.) at 378a. We affirm.

We previously summarized the relevant history of this case as follows. On August 7, 2020, Applicant submitted the Application to the Board for the Project, which the Board analyzed under the Palmyra Township Zoning Ordinance and its accompanying "Schedule of Use Regulations" (Ordinance).[1] The Project is described as a "conservation subdivision design residential development," which is permitted as a conditional use in the R-Residential Zoning District, where the property is located. *See Millbrook I*, slip op. at 2 (citations to record omitted).

The Application was referred to the Planning Commission and to various consultants and engineers for review. One Palmyra Township Supervisor recused himself from review of the Application, citing a conflict of interest. In addition, the appointed Township solicitor also removed himself from advising the Board on the Application because he represents Applicant. The Board engaged the services of an alternate Township solicitor to provide legal services to the Planning Commission and the Board for the Application. *See id.*, slip op. at 2-3.

The Planning Commission first reviewed the Application at its meeting on September 8, 2020, after which it asked the Board to schedule a public hearing on October 20, 2020.[2] The Planning Commission met again on October 13, 2020, November 10, 2020, December 8, 2020, and January 15, 2021, where it continued

---

[1] Zoning Ordinance of Palmyra Township, Pike County (August 20, 2013). Section 3.200 of the Ordinance defines "conditional use" as a "use which is not appropriate to a particular zone district as a whole, but which may be suitable in certain localities within the district only when specific conditions and factors prescribed for such cases" as described in the Ordinance are present. "Conditional uses are allowed or denied by the [Board] after recommendation by the Planning Commission." *Id.*

[2] As we noted: "Although Planning Commission review typically occurs before a Board public hearing, here, the Planning Commission recognized that its review would not be 'sufficient or complete' before the Board's October 20, 2020 public hearing, and it asked the Board to delay its decision until the Planning Commission completed its review." *Millbrook I*, slip op. at 5 (citation to the record omitted).

its review of the Application. The Planning Commission received information from Applicant and entertained comments and questions from numerous parties at the November, December, and January meetings.[3] *See id.*, slip op. at 3.

On October 20, 2020, the Board conducted a public hearing on the merits of the Application. As we noted in our prior opinion:

> The Board received public comment from five community members at the October 20, 2020 public hearing. *See* R.R. [197a-227a]. Although none of these individuals were permitted to formally question witnesses or offer evidence, they each commented on various concerns with the Project and its potential impact on traffic, safety, water, and sewer service in their community, as well as concerns about what they believed was the lack of adequate notice of the public hearing. *Id.* at [125a, 194a-227a]. Each individual who offered public comment identified himself/herself by name and address. At least four of the individuals who commented identified themselves as residents of Millbrook, the community adjacent to the site of the proposed Project. The Township solicitor advised Millbrook resident, Mr. Bova, that "whoever is counsel for your association should make sure that he or she picks up this information [information presented at the public hearing] and appears at either the [P]lanning [C]omission meeting or . . . the next time the [B]oard meets on this . . . ." *Id.* at [208a]. At the conclusion of the public hearing, the Township solicitor announced that the Board hearing was closed, and the Board would render a decision at its next meeting. *Id.* at [225a]. The Township solicitor advised those present at the public hearing that they should attend the upcoming meeting of the Planning Commission with further comments on the Project, and that the Planning

---

[3] The transcript of the Planning Commission's November 10, 2020 meeting may be found in the R.R. at 290a-401a. The transcript of the Planning Commission's December 8, 2020 meeting may be found in the R.R. at 402a-64a. The transcript of the Planning Commission's January 15, 2021 meeting may be found in the R.R. at 465a-523a. The R.R. does not contain a transcript for the Planning Commission's September or October meetings.

Commission would make a recommendation to the Board before the Board voted to approve or deny the Application. *Id.* at [226a-27a].

*Millbrook I*, slip op. at 4-5.

Moreover, as the proceedings continued, we stressed the following regarding the Association's and objectors' participation:

> The transcript of the Board's October 20, 2020 hearing clearly shows that at least four residents of Millbrook appeared before the Board to voice their objections to the Application. *See* R.R. at [198a, 204a, 210a, 211a-12a, 216a, 219a-22a]. One Millbrook resident, Mr. Bova, further identified himself as a member of the board of the Association. *Id.* at [204a]. Although none of the residents at the October 20, 2020 Board hearing responded to the Township solicitor that they were formally intervening in the hearing, each one of them made objections to the Application and engaged in dialogue with Applicant and the Board, even though they were not permitted to formally question witnesses or offer evidence. *Id.* at [194a-227a].

> Further, the transcripts of the meetings of the Planning Commission, which occurred after the Board hearing but before the Board's vote on the Application, reveal that several Millbrook residents and the Association appeared to voice their objections to the Application, as well as their confusion over their status as intervenors. Millbrook resident and president of the Association's board, Mr. Kissel, attended the November 10, 2020 Planning Commission meeting and objected to the Application. R.R. at [297a]. Counsel for the Association attended the December 8, 2020 Planning Commission meeting virtually, where he objected on behalf of the Association. *Id.* at [402a, 418a, 431a]. Counsel for the Association attended the January 15, 2021 Planning Commission meeting in person, where he again objected on behalf of the Association. *Id.* at [471a, 483a-84a]. At that meeting the Township solicitor referred to the Association as an objector. *Id.* at [482a]. In addition, Millbrook resident Mr. Frassa attended the November 10,

4

> 2010 Planning Commission meeting where he explained that he and other Millbrook residents who attended the Board's public hearing did not understand the Township solicitor's explanation about intervenor status. *Id.* at [299a, 301a].

*Millbrook I*, slip op. at 10-11.

Ultimately, following review, the Planning Commission recommended to the Board that the Application be granted subject to 15 conditions. R.R. at 573a. At a January 19, 2021 public meeting,[4] the Board voted to approve the Application, subject to the 15 conditions recommended by the Planning Commission. *Id.* at 554a, 570a-72a. Counsel for the Association appeared virtually for the Association, where he again commented on the Application and asked that the Board reopen the record in the matter. *Id.* at 524a, 538a-48a.[5]

The Association appealed the Board approval to the trial court, which considered the Applicant's motion to dismiss based on the Association's lack of standing. *Millbrook I*, slip op. at 6. Without taking additional evidence, the trial court heard argument, granted the Applicant's motion, and dismissed the appeal based on the Association's lack of standing in an order dated April 23, 2021, without

---

[4] The transcript of the Board's public meeting at which the Application was approved may be found in the R.R. at 524a-69a.

[5] Specifically, as Counsel argued at that Board meeting:

> [COUNSEL]: The issue is that that plan -- the record was closed at a conditional use hearing in October and now this plan represents new evidence as being presented to the [B]oard, that is different from the exhibits that were presented at the time of hearing. So if there is a -- new evidence is being presented, then the hearing should be reopened and the public should have the opportunity to review the exhibits that are being presented for the [B]oard's consideration.

R.R. at 541a.

reaching the merits of the Association's appeal. *Id.* On further appeal to this Court, we reversed and remanded the matter, directing the trial court to conduct "further proceedings on the merits of the Association's appeal." *Id.*, slip op. at 13.

Following remand, on September 9, 2024, the trial court issued the instant order again affirming the trial court's decision, which states, in relevant part:

> The appeal to [the trial c]ourt was initially dismissed for lack of standing, but following review by the Commonwealth Court, it was remanded to us for further consideration. After a conference with counsel for the participants, we issued our order of May 29, 2024 (docketed May 30, 2024), setting a briefing schedule and memorializing the parties' agreement that two outstanding issues remained outstanding, to wit: (1) whether [Applicant] failed to provide sufficient evidence that it satisfied conditions for approval in the [Ordinance], and whether the Board thus abused its discretion in granting the [Application]; and (2) whether the Board erred in considering information "from outside the record."

R.R. at 7a. In rejecting the Association's second claim in the appeal, the trial court explained that "[i]t begs the immediate question of what constitutes 'the record,'" and specifically rejected the Association's assertion "that the record is limited exclusively to what transpired at the October 20, 2020 Board meeting." *Id.* at 8a. Likewise, the trial court rejected the Association's claim that Applicant failed to present sufficient evidence. The Association then filed the instant appeal of the trial court's order affirming the Board's decision.

The Association first claims[6] that the trial court erred in affirming the Board's decision because the Board considered evidence outside of that that was

---

[6] As this Court has explained:

**(Footnote continued on next page…)**

admitted at the single October 20, 2020 Board hearing. However, Section 1003-A(b) of the Municipalities Planning Code (MPC)[7] states:

> ***Upon filing of a land use appeal, the prothonotary or clerk shall forthwith, as of course, send to the . . . [Board]*** . . . whose decision or action has been appealed, by registered or certified mail, the copy of the land use appeal notice, together with a writ of certiorari commanding said . . . board . . . , within 20 days after receipt thereof, to certify to the court ***its entire record in the matter in which the land use appeal has been taken, or a true and complete copy thereof***, ***including any transcript of testimony in existence and available to the . . . [Board] . . . at the time it received the writ of certiorari***. [(Emphasis added).]

Thus, contrary to the Association's assertion, the Board is statutorily required to certify "its entire record" of the proceedings on the Application, and is precluded by the MPC from limiting the record to the proceedings at the October 20, 2020 Board meeting. *Id.*[8]

---

> In zoning appeals where the trial court has taken no additional evidence, this Court's . . . review is limited to determining whether the zoning hearing board committed an error of law or an abuse of discretion. An abuse of discretion is found where the findings of the zoning hearing board are not supported by substantial evidence. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.

*Zitelli v. Zoning Hearing Board of Borough of Munhall*, 850 A.2d 769, 771 n.2 (Pa. Cmwlth. 2004) (citations omitted). For the sake of clarity, like the trial court, we reorder the Association's claims on appeal.

[7] Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11003-A(b).

[8] *See also Appeal of Crossley*, 432 A.2d 263, 264 (Pa. Cmwlth. 1981), in which we stated:

**(Footnote continued on next page…)**

7

Finally, in a related claim, the Association asserts that the trial court erred in affirming the Board's decision because there is not substantial evidence demonstrating that Applicant met all of the express criteria in the Ordinance supporting the Board's grant of its Application. Specifically, the Association contends that because substantial evidence was not presented at the October 20, 2020 Board meeting relating to the requirements of Section 6.102.F. of the Ordinance,[9]

This Court in *In re Appeal of Martin*, [381 A.2d 1321, 1322 (Pa. Cmwlth.] 1978), affirmed the lower court's holding that the action of the legislature in removing the provision (former Section 1007) requiring [an] appellant to obtain and file the transcript and in supplying the new provision requiring the . . . board to certify the entire record, including any transcript, "evinced an intention to shift the onus of providing the transcript, including the costs, to the municipality." [] It follows from the holding in *Martin* that the essence of [former] Section 1008(2)[, the predecessor to Section 1003-A,] is the mandate that the . . . board . . ., rather than the applicant, provide the record which includes the transcript and bear the related costs, when appeals are taken from its decisions. The twenty-day time period is not part of the essence of [former] Section 1008(2).

[9] Section 6.102.F. of the Ordinance states, in pertinent part:

Water Supply and Sewage Disposal - All conservation designed subdivisions shall be served with an off-site water supply. Sewage disposal may be provided by off-site or on-site facilities; however, on-site systems shall be located on the lot with the dwelling which the system serves.

R.R. at 577a. Moreover, with respect to this claim, as the trial court cogently explained in its Order:

[The Association] attempts to make much of an item somewhat out of context in suggesting a controversy where none exists; *i.e.*, the requirement that residences in the [Conservation Subdivision Design Residential Development (CSDRD) Zoning District] be served by an "off-site" water and sewage system. [The

**(Footnote continued on next page…)**

there is not substantial evidence supporting the Board's decision because the Board is precluded from considering any further evidence submitted at any subsequent hearing either before the Board or the Commission. *See* R.R. at 541a-46a.

However, as outlined above, under Section 1003-A of the MPC, the transcripts and evidence received at all of the hearings before the Board and Commission were considered by the Board prior to the grant of a conditional use

> Association] posits that this must mean ***completely*** off-site, but this is again an illogical conclusion, as it is undisputed that [the] Township neither provides nor has the infrastructure for central water and sewer services. We find that, in context, [Applicant's] and the Board's response that "off-site" merely means that individual units may not have their own individual well and septic systems to be adequate, and that [Applicant] demonstrated that the proposed [CSDRD use] would be served by appropriate communal systems located on [Applicant's] land.
>
> &ast; &ast; &ast;
>
> Finally, we observe that despite the active participation of its members and its professional legal counsel, [the Association] never made any attempt to introduce any evidence of its own to counter the statements in the [A]pplication and the testimony of witnesses in support of the [A]pplication. Despite having roughly [four] months, from the time of the Commission's initial report of the [A]pplication to the Board on September 15, 2020[,] to the Board's meeting of January 19, 2021[,] at which final approval was given, [the Association] never offered any expert reports or testimony of its own, or submitted physical or documentary evidence to give objective support to the subjective concerns of [its] individual members. Therefore, no matter how narrowly or broadly "the record" is construed, the only ***evidence*** before the Commission and the Board was that which was produced by [Applicant] and the Township's engineer. We find that evidence to be adequate to support the Board's approval of [Applicant's A]pplication, with the stated conditions, and will not disturb it.

R.R. at 9a-10a (emphasis in original). In sum, we discern no error or abuse of the trial court's discretion in this regard.

9

and are part of the record herein. 53 P.S. §11003-A. Thus, the Board did not base its decision on insubstantial evidence by relying on evidence received after the October 20, 2020 Board meeting. *Id.*

Accordingly, we affirm the trial court's Order.


_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Appeal by Millbrook Homeowners Association from the January 19, 2021 Conditional Use Decision of the Palmyra Township Board of Supervisors<br><br>Appeal of: Millbrook Homeowners Association | :<br>:<br>:<br>: No. 1378 C.D. 2024<br>:<br>:<br>:<br>:<br>: |

# **O R D E R**

AND NOW, this 9th day of April, 2026, the Order of the Pike County Court of Common Pleas dated September 9, 2024, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge